UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHARICKAA JACKSON,

        Plaintiff,

   v.

COUNTY OF ERIE, ERIE COUNTY
SHERIFF'S OFFICE, ERIE COUNTY
SHERIFF TIMOTHY B. HOWARD, ERIE
COUNTY SHERIFF JAIL MANAGEMENT
DIVISION SUPERINTENDENT THOMAS
DIINA, and DOES 1-10,

        Defendants.

**DECISION AND ORDER**

17-CV-396S

## I.  INTRODUCTION

In this action, pro se[1] Plaintiff Sharickaa Jackson seeks damages from Erie

County, its sheriff's office, its sheriff, Timothy B. Howard, its jail division management

superintendent, Thomas Diina, and ten unnamed defendants, for violations of her

constitutional rights while she was incarcerated in the Erie County Correctional Facility

("ECCF"). Before this Court is Defendants' Motion for Summary Judgment pursuant to

Rule 56 (a) of the Federal Rules of Civil Procedure. (Docket No. 31.) For the following

reasons, Defendants' motion is granted.

## II.  BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of the

motion for summary judgment. This Court takes the facts in the light most favorable to

---

[1] Jackson was represented by counsel through January 2, 2020. Her counsel responded to Defendants' motion for summary judgment but withdrew during the pendency of that motion. (See Docket Nos. 43, 43.)

Jackson, the non-moving party.  See Mitchell v. City of New York, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party").

At all relevant times, Sharickaa Jackson was an inmate in the custody of the Erie County Sheriff. (Defendants' Statement of Facts, Docket No. 31, ¶ 1.) She was incarcerated on January 11, 2016, due to an alleged parole violation. (Id., ¶ 4.)

During the booking process on January 11, 2016, Nicole Bell, R.N., administered a pregnancy test, which came back negative. (Id., ¶ 10.) The medical exam conducted at this time indicated that Jackson's last menstrual period was on December 18, 2015. (Id.)

Jackson had experienced ongoing back pain as a result of a 2008 injury. (Id., ¶ 8.) Between January 11 and February 10, 2016, she made several sick call requests due to chronic pain. (Id., ¶¶ 11, 13, 15, 17, 20, 22.) Each of these sick calls resulted in medical follow-up. (Id., ¶¶ 12, 14, 16, 18, 19, 21, 23.) On the evening of February 10, 2016, Jackson complained to a corrections officer that she had been vomiting and was experiencing abdominal pain. (Id., ¶ 26; Plaintiff's Statement of Facts, Docket No. 36, ¶ 26.)

Jackson filed two additional sick call requests on February 11, 2016, at 12:00 and 1:00 PM. (Docket No. 31, ¶ 27.) On the evening of February 11, 2016, Jackson reported increased pain to Deputy Harris. (Docket No. 36, ¶ 28.) Harris informed her that she had already been seen by medical staff, and told Jackson to return to her bed. (Id.) The parties' characterizations of what happened next vary: Jackson either "refused to bunk up for a head-count" (Defendants' Statement of Facts, Docket No. 31, ¶ 28), or informed Harris and another officer that she could not walk back to her bed, because the pain was

2

too intense (Plaintiff's Statement of Facts, Docket No. 36, ¶ 28.) Other defendants removed Jackson from the area, and placed her in keep lock. (Docket No. 31, ¶ 28; Docket No. 36, ¶ 28.)

One hour later, Jackson was seen by medical staff. (Docket No. 31, ¶ 29) Nurse Kateland Woodside noted that Plaintiff complained of abdominal pain, yellow discharge from her vagina, and pressure during urination (Id.) Woodside noted that Plaintiff had not had menses in two months, but ultimately concluded that her symptoms stemmed from reduced bowel movements and impaired physical mobility. (Id.) Plaintiff was returned to keep lock. (Docket No. 36, ¶ 29.)

Around 3:00 AM on February 12, 2016, Jackson was seen again by medical staff. (Docket No. 31, ¶ 30.) Jackson was complaining of urinary retention. (Id.) Medical staff attempted to catheterize Jackson three times, but failed, noting a large amount of mucus on the tip of the catheter. (Id.) Jackson was then sent to Erie County Medical Center ("ECMC"), where she was diagnosed with a ruptured ectopic pregnancy[2] and hemoperitoneum.[3] (Id., ¶ 31.) Jackson underwent emergency surgery for these conditions at ECMC. (Id.)

---

[2] An ectopic pregnancy occurs when "a fertilized egg grows outside a woman's uterus, somewhere else in her belly. It can cause life-threatening bleeding and needs medical care right away." https://www.webmd.com/baby/pregnancy-ectopic-pregnancy#1, accessed 9/14/2020 at 2:06 PM. As an ectopic pregnancy grows, "it can cause the tube to burst (rupture). A rupture can cause major internal bleeding. This can be a life-threatening emergency that needs immediate surgery." https://www.acog.org/patient-resources/faqs/pregnancy/ectopic-pregnancy. Accessed 9/14/2020 at 2:08 PM.

[3] "Hemoperitoneum is a type of internal bleeding. ... The peritoneal cavity is a small area of space located between your internal abdominal organs and your inner abdominal wall. Blood in this part of your body can appear because of physical trauma, a ruptured blood vessel or organ, or because of an ectopic pregnancy. Hemoperitoneum can be a medical emergency." https://www.healthline.com/health/hemoperitoneum, accessed 9/14/2020 at 2:11 PM.

### III.  DISCUSSION

Jackson claims that Defendants were deliberately indifferent to her serious medical needs, in violation of the Eighth and Fourteenth Amendments. She seeks compensatory and punitive damages in an amount to be determined, attorney's fees, and costs.

Defendants move for summary judgment on Jackson's claim.

### A.     Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252.  A nonmoving party must do more than

cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading...."); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the non-moving party. See Anderson, 477 U.S. at 252.

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

## B.   Claims against Doe defendants

Defendants argue that dismissal is warranted as to the unnamed "Doe" defendants because this Court lacks personal jurisdiction over them. They point out that Jackson never served these defendants, despite their being identified by name in Defendants' Rule 26 (a)(1) disclosures. (Docket No. 32 at pp. 16-17; see also Defendants' Rule 26 (a)(1) disclosure, Docket No. 31-36 at p. 2.) Jackson argues that Defendants waived this defense by not making it pursuant to a Rule 12 motion. Defendants reply that they raised this defense in their answer, as permitted by Rule 12 (h).

For a federal court to exercise personal jurisdiction, "the plaintiff's service of

process upon the defendant must have been procedurally proper." <u>Licci ex rel. Licci v. Lebanese Canadian Bank, SAL</u>, 673 F.3d 50, 59 (2d Cir. 2012) "If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant." <u>Assets Recovery 23, LLC v. Gasper</u>, No. 15CV5049, 2017 WL 3610568, at *4 (E.D.N.Y. July 25, 2017). A party waives a defense of lack of personal jurisdiction if it fails either to include it in a responsive pleading or raise it in a motion under Rule 12. Fed. R. Civ. P. 12 (h)(1)(B)(i)-(ii).

Courts typically resist dismissing suits against John Doe defendants until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials. <u>Coward v. Town & Vill. of Harrison</u>, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). But where a plaintiff has had ample time to discover the identities of the unnamed officials and has not yet named or served them, dismissal without prejudice is proper. <u>See, e.g.</u>, <u>Webb v. Miller</u>, No. 918CV610TJMDJS, 2020 WL 1227155, at *2 (N.D.N.Y. Mar. 12, 2020); <u>Cruz v. City of New York</u>, 232 F. Supp. 3d 438, 448–49 (S.D.N.Y. 2017).

Here, Defendants raised lack of personal jurisdiction as a defense in their answer. (Docket No. 9, ¶ 30.) They now ask this Court to dismiss the Complaint against all the Doe defendants pursuant to Federal Rule of Civil Procedure 12 (b)(2). (Docket No. 32 at p. 17.) Jackson's only argument in response is that Defendants waived the service argument by failing to raise it in a Rule 12 motion. (Docket No. 37.) But this misstates the rule. By asserting lack of personal jurisdiction in their answer, Defendants preserved the defense.  (Docket No. 9.)

6

Jackson has been on notice regarding the failure of service since Defendants' answer on August 15, 2017. (Docket No. 9) There is no evidence in the record that the Doe defendants were served, even though they were identified in Defendants' Rule 26 (a)(1) disclosures, filed on October 19, 2017. (Docket No. 15.)

Because the Doe defendants have not been served, this Court has no jurisdiction over them. Jackson's action will therefore be dismissed without prejudice pursuant to Rule 12 (b)(2) as to the unnamed Doe Defendants.

## C.   Claims against Erie County Sheriff's Office

Defendants argue that the claim against the Erie County Sheriff's Office should be dismissed because a sheriff's office is not a suable entity. Jackson argues that the County is liable for acts of its employees, but she does not address Defendants' argument regarding the Sheriff's Office's status as a suable entity.

Under New York Law, a county is a municipal corporation capable of bringing suit and being sued. See New York General Municipal Law § 2. A police department is a municipal arm of the municipal corporation. Baker v. Willett, 42 F. Supp. 2d 192 (N.D.N.Y. 1999). Because a police department does not exist separate and apart from the municipality, it is not considered its own legal entity, and cannot sue or be sued. Brown v. Cty. of Erie, No. 12-CV-251, 2013 WL 885993, at *2–3 (W.D.N.Y. Mar. 8, 2013) (citing Baker, 42 F. Supp. 2d at 192); see also Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); Loria v. The Town of Irondequoit, 775 F. Supp. 599 (W.D.N.Y. 1990) (defendant police department, which is merely an administrative arm of a municipal corporation, does not have a legal identity separate and apart from the town).

Defendants argue correctly that the Erie County Sheriff's Office is an improper

party in this matter. Like a police department, the Sheriff's Office is an administrative arm of Erie County, and Erie County is the correct defendant here. The claims against the Erie County Sheriff's Office will therefore be dismissed.

### D.   Official-Capacity Claims against Howard and Diina

Jackson does not specify whether she brings her claims against Sheriff Timothy Howard and Jail Superintendent Thomas Diina in their official or individual capacities. Insofar as the claims are brought against Howard and Diina in their official capacities, this Court will dismiss them.

An official-capacity suit is, essentially, a suit against the municipality of which the officer is an agent. Stancati v. Cty. of Nassau, No. 14-CV-2694 JS ARL, 2015 WL 1529859, at *2 (E.D.N.Y. Mar. 31, 2015) (citing Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). "[I]n the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant." Phillips v. Cty. of Orange, 894 F. Supp. 2d 345, 385 (S.D.N.Y. 2012). This Court will therefore dismiss the claims against Timothy Howard and Thomas Diina in their official capacities.

### E.   Municipal-liability claim against Erie County

Defendants move for summary judgment as to Erie County on the grounds that there is no evidence that a "municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). Jackson appears to argue that a county can be held liable for the deliberate indifference of its sheriffs and deputies, and further, that Defendants have some kind of policy of punishing inmates for complaining about their medical

conditions.

A municipality cannot be held liable under a theory of *respondeat superior* for the unconstitutional acts of its employees. City of Canton, Ohio v. Harris, 489 U.S. 378, 387, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989) ("[A] city [would not] automatically be liable under § 1983 if one of its employees happened to apply [a municipal] policy in an unconstitutional manner, for liability would then rest on *respondeat superior.*"); Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) (noting that a municipality "may not be liable under § 1983 simply for the isolated unconstitutional acts of its employees.").

However, "a plaintiff can establish a violation of her constitutional rights by showing the violation was caused by a municipal policy, practice, or custom." Treadwell v. Cty. of Putnam, No. 14-CV-10137 (KMK), 2016 WL 1268279, at *3 (S.D.N.Y. Mar. 30, 2016). To prevail on a constitutional claim against a municipality, "a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

A plaintiff may satisfy the "policy or custom" requirement by showing: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. Treadwell v. Cty. of

Putnam, No. 14-CV-10137 (KMK), 2016 WL 1268279, at *3 (S.D.N.Y. Mar. 30, 2016); Brandon v. City of N.Y., 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Defendants argue, and submit medical evidence to support, that they consistently provided medical care to Jackson, and that there is therefore no evidence of a custom or policy of ignoring serious medical needs.

Jackson concedes that a county may not be held responsible for *negligent* acts of sheriff and deputies, but argues that here, they are accused of deliberate indifference, a more serious allegation, and that the county can therefore be held liable. (Docket No. 37 at p. 4.) This argument fails to take notice of the fact that a Monell claim requires not only deliberate indifference but the existence of some official policy or custom.

Jackson also appears to argue that her disciplinary report for the events of February 12, 2016, proves that Defendants had a policy sanctioning unconstitutional conduct. (Docket No. 37 at p. 4.) Jackson appears to argue that the fact that she was disciplined for not obeying an order demonstrates a policy of punishing inmates with keep lock because they complain of serious pain. (See Docket No. 37 at p. 1.)

The existence of a policy imposing consequences on inmates for refusing to obey direct orders, without more, does not raise constitutional concerns. The Supreme Court has counseled courts to defer to the decisions of prisons regarding discipline. Hudson v. McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 998–99, 117 L. Ed. 2d 156 (1992) "'[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"), quoting Whitley v. Albers, 475 U.S. 312, 321-22, 106 S. Ct. 1078, 1085, 89 L. Ed. 2d 251 (1986).

10

The question before this Court is whether there is evidence from which a reasonable jury could find a policy of failing to provide appropriate medical care or of punishing inmates when they complain of pain. Even if there were a question whether individual defendants should have known of the risk that Jackson might be pregnant, Jackson has brought forth no facts to suggest that the events of February 11-12, 2016, represent more than a onetime occurrence. To sustain a municipal-liability claim, Jackson must do more than this.

Without any evidence from which a reasonable jury could find that any defendant acted pursuant to a county policy, Erie County cannot be held liable. This Court will therefore grant summary judgment as to Erie County.

**F.    Individual Liability claims against Howard and Diina**

Defendants argue that Howard and Diina are not liable under any theory of supervisory liability. Jackson argues that Howard and Diina are liable because they created or tolerated a policy under which their subordinates denied her appropriate medical care and punished her for her medical condition.

An official sued under § 1983 is liable only if the plaintiff can show the official's personal involvement in the constitutional violation. See Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Al–Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989). A supervisory defendant can be held liable when: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or

11

custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Jackson argues that Howard and Diina are liable under the third Colon theory, i.e. that they created or allowed the continuance of a policy or custom under which unconstitutional practices occurred. As noted above, she appears to argue that the disciplinary policy pursuant to which she was sent to keep lock reflects a county policy of punishing inmates because they complain of pain. (Docket No. 37 at p. 4.)

As discussed above, the existence of a policy punishing inmates for a refusal to follow direct orders, without more, does not implicate constitutional concerns. See Hudson, 503 U.S. at 6. And Jackson does not offer any evidence that Howard or Diina "implicitly authorized, knowingly acquiesced, or were even aware of any unconstitutional practices by any of the other defendants, or anyone else." Porter v. Coughlin, 964 F. Supp. 97, 105 (W.D.N.Y. 1997). Nor does the record contain any facts suggesting that either Howard or Diina was grossly negligent in managing or supervising any employees or was deliberately indifferent to unconstitutional practices.

Given the facts in the record, a reasonable jury could not find Howard or Diina liable under any of the Colon theories. There is thus no question of fact regarding their personal involvement, and summary judgment will be granted as to Howard and Diina.

**G.  Jackson's Eighth and Fourteenth Amendment Deliberate Indifference claims**

Because the only defendants against whom Jackson could bring a deliberate indifference claim –the Doe defendants—have been dismissed for lack of personal

jurisdiction, this Court will not engage in an analysis of Jackson's claims against them here.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted. Because Jackson has not served any of the unnamed defendants, this Court will dismiss, without prejudice, her claims against all the individual Doe defendants. This Court will also dismiss as redundant Jackson's claims against Howard and Diina in their official capacities. This Court finds that a reasonable jury could not find that any of the individual defendants acted pursuant to an Erie County policy—and will therefore grant summary judgment as to Erie County. Finally, a reasonable jury could not find that Howard or Diina was personally involved in any constitutional violations. This Court will accordingly grant summary judgment as to Howard and Diina for any claims against them in their individual capacities.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 31) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:        September 22, 2020
              Buffalo, New York


                                          s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge

13